# Exhibit H

### WILLIAM J. OLSON, P.C.
ATTORNEYS AT LAW

370 MAPLE AVENUE WEST, SUITE 4

VIENNA, VIRGINIA 22180-5615

WILLIAM J. OLSON
(VA, D.C.)

HERBERT W. TITUS
(VA OF COUNSEL)

JEREMIAH L. MORGAN
(D.C., CA ONLY)

ROBERT J. OLSON
(VA, D.C.)

TELEPHONE (703) 356-5070

FAX (703) 356-5085

E-MAIL: wjo@mindspring.com

http://www.lawandfreedom.com

114 CREEKSIDE LANE
WINCHESTER, VA  22602-2429
TELEPHONE (540) 450-8777
FAX (540) 450-8771

January 3, 2020
via email to FOIARequest@psc.hhs.gov

Deputy Agency Chief FOIA Officer
Office of the Assistant Secretary for Public Affairs
U.S. Department of Health and Human Services
Hubert H. Humphrey Building
200 Independence Avenue, Suite 729H
Washington, D.C.  20201

Re:   Public Advocate of the United States
      FOIA Request No. 20-00027-FOIA
      <u>APPEAL OF FEE WAIVER DENIAL</u>

Dear Sirs:

We represent Public Advocate of the United States ("PA") and, on its behalf, submitted a Freedom of Information Act ("FOIA") request on October 3, 2019, asking for certain records relating to the Center for Disease Control's ("CDC") "Start Talking. Stop HIV." video series that was part of the CDC campaign "Acting Against AIDS."

**Background**

In its request, PA sought a waiver of fees, explaining that PA is a nonprofit corporation exempt from federal income taxation, is seeking "the requested documents to educate the public on a matter of great public importance," that "release of the requested documents is in the public interest, and the requested information is likely to contribute significantly to public understanding of the operations or activities of the government." PA further explained that its FOIA request was "not primarily for any commercial interest or purpose, including any commercial interest of PA. PA intends to disseminate to the general public, free of charge, any important information it obtains as a result of this request."

On October 8, 2019, we received an acknowledgment letter from CDC, assigning our request a tracking number, assigning our request to the "complex track," denying our request for expedited servicing, and denying our request for a fee waiver. The letter explained that CDC had classified PA as an "all other requester" and that PA would be charged for search

2

and duplication fees.  The letter stated that PA's request had an estimated completion date of April 6, 2020.[1]  The letter stated that we had until January 6, 2020 to appeal the decision.

Then, on October 25, 2019, we received another letter from CDC, alleging that our request was "overly broad," and stating that our request would be closed on November 14, 2019,[2] unless we narrowed it.  On October 30, 2019, we sent a follow-up letter to CDC, further explaining the specific types of documents sought by our request.  CDC apparently considered our follow-up letter to be a sufficient explanation and/or narrowing of our request, because it set about to process PA's request.

Then, on November 19, 2019, we received an additional letter from CDC, stating that the "NCHHSTP conducted a preliminary search for records. For the NCHHSTP records to be processed, the assessed cost for the NCHHSTP documents is $5958.00."  Attached to the letter was an invoice, asking us to send a $5958 payment for search fees, in order to have our request processed.  The CDC letter gave us **one week**[3] — untill November 26, 2019 — to respond, stating that otherwise our request would be closed.

On November 20, 2019, we sent a reply email to CDC.  We objected to the one-week deadline, objected to CDC's fee estimate, and noted that we would file an administrative appeal of CDC's fee waiver denial based on the deadlines provided by law, not by bureaucrats.

That same day, we received a phone call and spoke with the CDC FOIA official assigned to our request.  We were told that the $5958 fee agreement was not a hard-and-fast number, and that we did not actually need to pay it at this time, but rather that a better estimate would be provided after an **actual** search — apparently different from a "preliminary search" — was conducted.

In response, we explained that our client is a nonprofit organization, seeking these documents to inform the public about the workings of government, and explained why the records being sought are of significant public interest.  We also explained that PA qualifies as a member of the media, having previously used the FOIA process to obtain and disseminate information to the public through various channels.  We noted that our client does not agree to CDC's fee waiver denial, and that we would appeal.

---

[1] *See* 45 C.F.R. § 5.26.

[2] CDC's short deadline of 13 business days appears to have been arbitrary and capricious.

[3] This CDC deadline appears to violate the "20 working days" requirement in 45 C.F.R. § 5.51(b) and (e).

3

In response, the CDC official sought additional time for the office to reconsider CDC's fee waiver denial.  However, later that day, we received a reply from CDC, confirming that CDC would not waive fees, and stating "please proceed with your administrative remedy."

On December 3, 2019, we emailed the CDC FOIA office, asking for the appropriate email address to which we should send our appeal letter, and we quickly received a reply.  Then, just hours later, we received a hurried letter from CDC stating that "we have administratively closed your request" because "the agency has not received additional information requested from you in our letter dated November 19, 2019."  This letter stated that our appeal would be due by Monday, March 2, 2020.

Thus, pursuant to 45 C.F.R. § 5.61, PA hereby appeals both CDC's denial of its fee waiver request and CDC's administrative closure of its request.

### Argument

**1.      CDC Was Wrong to Deny the Fee Waiver to Which PA Is Clearly Entitled.**

PA is entitled to a fee waiver in this case as a matter of law for at least two reasons.  **First, PA is entitled to a *complete waiver of fees*** because disclosure of the records PA seeks "is in the public interest."[4]  Information obtained from PA's FOIA request is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii); 45 C.F.R. Section 5.54.  Since PA meets these factors, the granting of a fee waiver is not a matter of discretion, but mandatory.  *See* Edmonds Inst. v. DOJ, 460 F. Supp. 2d 63, 72 (D.D.C. 2006); Votehemp, Inc. v. DEA, 237 F. Supp. 2d 55, 58 (D.D.C. 2002).

Indeed, PA's request clearly meets each of the three criteria as described by the D.C. Circuit:  PA's request (i) will "shed light on" government activities, it (ii) will "contribute significantly to the public understanding" of CDC's campaign, and PA's request (iii) is not "primarily in the commercial interest" of PA.  *See* Cause of Action v. FTC, 799 F.3d 1108 (D.C. Cir. 2015).  PA is a prominent nonprofit, tax-exempt social welfare organization.  Its activities are primarily devoted to educating the public about various issues and laws — including government impropriety — as described in PA's FOIA request.  PA also has filed *amicus curiae* briefs in 67 state and federal cases.  It has a large email list of supporters and an active website.  It posts videos, songs, and other content on YouTube.

---

[4]  Under the FOIA, the touchstone for deciding fee waiver requests is whether the waiver "is in the public interest because furnishing the information can be considered as primarily benefitting the general public."  5 U.S.C. Section 552(a)(4)(A).

4

First, the records PA seeks unquestionably will shed light on controversial government activities, namely how the CDC's "Start Talking. Stop HIV." video series was planned, executed, and paid for.  That is the essence of PA's request, and provides a "connection that is direct and clear" to the government activity that is being investigated.  *See* 5 C.F.R. § 5.54(b)(1).

Second, the records PA seeks unquestionably will contribute significantly to the public understanding of this important topic of interest.  Even after the Supreme Court's sanctioning of homosexual marriage in 2015, over one-third of the American public still believes that marriage is only between a man and a woman.[5]  Reportedly, so does the President of the United States.[6]  Nevertheless, the CDC has continued a misguided social policy campaign to openly celebrate, promote, and endorse homosexual marriage, under the guise of public health and minimizing the transmission of HIV, and in direct contravention of the President's policy agenda.  How and why this dyssynchronous situation occurred clearly is an issue about which a significant segment of the public will be interested to learn more.  One of PA's focuses in recent years has been uncovering and disseminating information about federal agencies and officials who act in contravention to the President's pro-family, pro-life, pro-marriage, and pro-Christian agenda.  The records PA seeks will permit the public to evaluate CDC's compliance (or lack thereof) with the President's policy agenda.

Third, PA unquestionably does not seek these records primarily for any commercial interest.  CDC appears to agree, having classified PA as an "all other requester" and having not sought to charge review fees.  Indeed, PA routinely makes the information it obtains from FOIA requests freely available on its website, through its emails and letters to supporters, via press releases, social media, and through various news sources on the Internet.  As a nonprofit educational organization, PA has always offered such information free of charge to the public.[7]  PA plans to continue that trend with this FOIA request (should similar interesting records be uncovered),[8] and in the future.

In sum, PA's FOIA request is quintessentially the type of request in which a fee waiver should be granted.  As the U.S. Court of Appeals for the D.C. Circuit has explained, "the fee

---

[5]  https://news.gallup.com/poll/117328/marriage.aspx.

[6]  Human Rights Campaign, "Donald Trump: Opposes Nationwide Marriage Equality."

[7]  To be sure, PA, like any nonprofit organization, occasionally asks its supporters for contributions in order to continue its work, but any donations are completely voluntary and not in any way tied to PA's dissemination of information to the public free of charge.

[8]  PA "of course cannot specify the exact content of the documents which its request will generate for public dissemination."  Judicial Watch v. GSA, 2000 U.S. Dist. LEXIS 22872, *36 (D.D.C. 2000).

5

waiver provision … was added to FOIA 'in an attempt to prevent government agencies from using high fees to discourage types of requesters, and requests,' in particular those from … nonprofit public interest groups." Better Gov't Ass'n v. U.S. Department of State, 780 F.2d 86 (D.C. Cir. 1986).  The court noted that:

> most importantly for our purposes, nonprofit public interest
> groups … rely heavily and frequently on FOIA and its fee waiver
> provision to conduct the investigations that are essential to the
> performance of certain of their primary institutional activities —
> publicizing governmental choices and highlighting possible
> abuses that otherwise might go undisputed and thus unchallenged.
> These investigations are the necessary prerequisites to the
> fundamental publicizing and mobilizing functions of these
> organizations. Access to information through FOIA is vital to
> their organizational missions…. [Id. at 93-94.]

To be sure, there are obvious political reasons why CDC might wish to resist disclosure of embarrassing information, through imposition of exorbitant FOIA fees.  But that is no reason to deny PA's fee waiver request.  Indeed, in discussing FOIA fees waivers, Senator Leahy once stated that:

> experience suggests that agencies are most resistant to granting
> fee waivers when they suspect that the information sought may
> cast them in a less than flattering light or may lead to proposals to
> reform their practices.  Yet that is precisely the type of
> information which the FOIA is supposed to disclose, and agencies
> should not be allowed to use fees as an offensive weapon against
> requesters seeking access to Government information…. [132
> Cong. Rec. S14298 (daily ed. Sept. 29-30, 1986) (Statement of
> Senator Leahy).]

Finally, D.C. courts have held that "[t]he legislative history 'admonishes agencies to apply the public-interest waiver liberally.'" Judicial Watch v. GSA at *12.  It is clearly in the public's interest to learn how the CDC's video series was organized and operated, especially when it blatantly runs contrary to the policy agenda of the President of the United States, and counter to the deeply held views of a large portion of the American public.

**Second, PA is entitled to a waiver of search and review fees because it is a "representative of the news media."**  PA is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."  5 U.S.C. Section 552(a)(4)(ii)(II); 5 C.F.R. § 5.53(b).  PA meets each of those criteria. See Cause of Action, 799 F.3d at 1118, et seq.  PA regularly submits FOIA requests to various agencies of government about

newsworthy topics of significant interest to the public, digests the records produced by the agency, and informs the public about the functions of government through its website, emails, Twitter postings, press releases, letters, news articles, YouTube, etc.

For example, in 2016, PA submitted FOIA requests to the U.S. Department of Justice and the Department of Education seeking records about the alleged "growing chorus" of persons demanding that so-called "transgender" students be permitted to use the bathroom of the opposite sex.[9]  After receiving records from those agencies, PA disseminated this information to thousands of its supporters, including through postings on its website[10] and a press release,[11] all available free of charge to the public.  PA also created and published[12] a news article exposing the truth behind the agencies' fraudulent statements, and showing that in fact the growing chorus was of citizens **against** students using opposite-sex bathrooms.[13]  That PA article received nearly 800 comments from CNS News readers, making it one of that publication's most popular articles.[14]  Finally PA's story was picked up and reported on by other groups.[15]

Similarly, in April of 2018, PA submitted a FOIA request to the U.S. Department of Justice, asking for records demonstrating compliance (or noncompliance) with President

---

[9]  https://www.publicadvocateusa.org/library/FOIA_request_to_DOJ.pdf.

[10]  Public Advocate of the United States, "4,304,544 Likes: Western Journalism reports President Obama's Transgender Bathroom Fraud Exposed" (Oct. 29, 2016).

[11]  Public Advocate of the United States, "Legal Action: President Lied About "Complaints" on Transgender Policies….. Obama Transgendered Bathroom Fraud" (Oct. 6, 2016).

[12]  Indeed, PA routinely "disseminates" information, rather than "merely mak[ing] available[] the requested information" to others.  Judicial Watch, Inc. v. DOJ, 185 F. Supp. 2d 54, 60 (D.D.C. 2002).

[13]  E. Delgaudio, "Obama's Trans Bathroom Fraud Exposed: No 'Growing Chorus' to Desegregate Bathrooms Exists," CNS News (Oct. 26, 2016).

[14]  Certainly, this fact alone demonstrates that PA's disseminations of information reach a "reasonably broad audience of persons interested in the subject."  See 45 C.F.R. Section 5.54(b)(2)(ii); see also Cause of Action v. FTC, 799 F.3d 1108, 1117 (D.C. Cir. 2015).

[15]  See P. LaBarbera, "Obama Fibbed About 'Growing Chorus' of Support for Radical Transgender Bathroom Policy — White House Responds to Public Advocate FOIA," Americans for Truth about Homosexuality; see also https://www.publicadvocateusa.org/library/CHARLIEDELGAUDIOVOICER.mp3.

7

Trump and then-Attorney General Sessions' orders for U.S. Attorneys to designate "religious liberty points of contact" within each office.  After filing suit (Public Advocate v. DOJ, 19-0984 (D.D.C.)) to obtain the requested records, the records were disclosed, and PA then reviewed the records and published its findings as news stories, showing that many U.S. Attorney offices had simply ignored the orders.[16]  Likewise, Public Advocate also disseminated its findings and conclusions to thousands of its supporters through its email lists, twitter feed, and postings on its web site,[17] all available free of charge.

**2.**     **CDC Was Wrong to Administratively Close PA's Request.**

CDC's December 3, 2019 letter states that PA's request was administratively closed because we did not respond to a November 19, 2019 CDC letter by November 26, 2019.  As noted above, this arbitrary and capricious deadline of five business days violates 45 C.F.R. § 5.51(b) and (e), both of which clearly provide deadlines of 20 business days before a request may be administratively closed while in discussions over fees.  Additionally, PA's request was closed solely based on PA's disagreement with CDC's erroneous conclusion that a fee waiver is not appropriate here.  However, as explained above, a waiver of all fees is required by law in this case.  Thus, in responding to PA's FOIA request, CDC has violated both its own procedural rules and the substantive law governing FOIA.

**Conclusion**

For the reasons above, we would ask that CDC's denial of PA's fee waiver request, along with CDC's administrative closure of PA's FOIA request, be overturned, and that PA's request for a complete fee waiver be granted.  As three months have now passed since PA filed its FOIA request, we would also request that CDC FOIA staff be instructed to expedite search for and production of the records we seek, in order to avoid our client being forced to take legal action to compel production of records.

Sincerely yours,

Robert J. Olson

---

[16]  E. Delgaudio, "US attorneys ignoring Trump's orders to prioritize religious liberty," *The Christian Post* (Oct. 10, 2019); *see also* "US Attorneys Ignoring Trump's Orders to Prioritize Religious Liberty," *The Epoch Times* (Oct. 9, 2019).

[17]  E. Delgaudio, "U.S. Attorneys Mostly Ignore President Trump Orders to Prioritize Religious Liberty," Public Advocate of the United States (Oct. 1, 2019).

8

RJO:ls

cc:     Public Advocate of the United States